IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| KEVIN DEAN BENNETT,<br>Institutional ID No. 2355208 | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1-24-CV-00093-BU |
| ERMIAS Z. ABEBE, *et al.* | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff KEVIN DEAN BENNETT, an inmate at the Jester III Unit, brings this action against Defendants Ermias Z. Abebe and Dr. Christopher S. Eddleman (collectively, "the Defendants"), alleging that they violated his constitutional rights. Bennett's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Bennett has been granted leave to proceed *in forma pauperis*, Dkt. No. 9, and he sues government officials, *see* Dkt. No. 8. For the reasons below, the Court should DISMISS Bennett's claims against all Defendants.

### I. JURISDICTION

Bennett brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 8. Venue is proper in the Northern District of Texas, Abilene Division, because Bennett's claims arise from his incarceration at French Robertson Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The

1

undersigned has the authority to enter these Findings, Conclusions, and Recommendations after Senior United States District Court Judge Sam R. Cummings transferred Bennett's case to the undersigned for preliminary screening.[1] Dkt. No. 11; 28 U.S.C. § 636(c)(1). Bennett has not consented to the undersigned exercising the full jurisdiction of this Court.

## II. FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Bennett first arrived at the French Robertson Unit around October 21, 2021. Dkt. No. 18 at 7. While at the Robertson Unit, Bennett sought treatment for his extreme shortness of breath and hip pain. Dkt. No. 18 at 1. His medical service provider, Dr. Abebe, recommended that Bennett undergo Posterior Lumbar Interbody Fusion (hereinafter "lower-spine surgery") to resolve the symptoms. Dkt. No. 8 at 4.

Bennett expressed concerns to Abebe about the possibility of surgical complications and inquired whether other options were available. Dkt. No. 18 at 3. Abebe told him that

---

[1] Bennett's case was later reassigned to United States District Judge James Wesley Hendrix. *See* Special Order No. 3–355.

surgery was the only option, and explained the "outcome of the surgery without error;" specifically, Abebe claimed that Bennett's quality of life would be improved, that his pain would be reduced, and that he would be able to walk without assistive devices. Dkt. No. 18 at 3. Bennett also expressed the same concerns to Dr. Eddleman, a surgeon employed by Hendrick Medical Center, who confirmed that surgery was the only treatment available. Dkt. No. 18 at 3, 12–13. Because Bennett believed surgery was his only option, he consented to the procedure. Dkt. No. 18 at 2.

On June 15, 2022, Bennett was transported to Hendrick Medical Center and underwent lower-spine surgery. Dkt. No. 8 at 4. However, the surgery did not improve Bennett's condition; on a scale of 1-10, his pain increased from a four pre-surgery to a "10 level nonstop pain" post-surgery. Dkt. No. 18 at 3–4. He became unable to walk without use of a wheelchair, as well as suffering stiff bones and joints, numbness in his legs, arm, and back, and uncontrolled movements in his legs. Dkt. No. 18 at 2–3. Bennett also suffered from incontinence, erectile dysfunction, severe anxiety, severe migraines or headaches, and stomach issues. Dkt. No. 18 at 2–3.

When Bennett reported his condition to Robertson Unit staff, included Abebe, he was moved to the infirmary for more than four months. Dkt. No. 18 at 10. He was provided medication and a single heating pad, but these treatments were ultimately ineffective. Dkt. No. 18 at 9–10. The staff also told Bennett that they would "tell the Doctor," along with other vague responses. Dkt. No. 18 at 10. Bennett alleges that the medical staff should have considered alternatives, such a steroid treatments, decompression therapy, or referral to a nerve specialist; Bennett also alleges that effective treatment was delayed, causing

"additional and lasting nerve damage." Dkt. No. 18 at 9.

Bennett was finally referred to John Sealy Hospital for corrective surgery. Dkt. Nos. 8 at 4, 18 at 6. On June 7, 2023, the medical staff at John Sealy informed Bennett that they found a laminectomy defect and loosened screws in his spine. Dkt. Nos. 8 at 4, 18 at 5–7. Bennett also received documentation from his June 2022 surgery that acknowledged leaving a "foreign object" in his spinal canal, which Bennett alleges was a piece of cotton. Dkt. No. 18 at 5–7. Bennett alleges that Dr. Eddleman wrote the documentation acknowledging the foreign object. *Id.*

Bennett now alleges that Abebe and Eddleman failed to consider alternative treatments to surgery. Specifically, Bennett claims that his initial pain could have been treated with steroid injections; based on medical research and testimonials from other inmates, Bennett believes that the anti-inflammatory properties of steroid injections would have treated his symptoms. Dkt. No. 18 at 2. Bennett also alleges that Abebe failed to disclose the risks of the surgery, instead using him as a "pawn and test puppet." Dkt. No. 18 at 11–12. Rather than make an effort to consider alternatives to surgery, Bennett alleges that Abebe and Eddleman prioritized surgery as part of a scheme to generate a "secure financial stream of inmates medical / surgeries" for their own benefit. Dkt. No. 18 at 12.

### III. THE PARTIES

Bennett brings this civil action under § 1983 against two individual defendants: (1) Dr. Abebe, his medical provider, and (2) Dr. Eddleman, the surgeon he performed his lower-spine surgery. Dkt. No. 8 at 3. Bennett alleges that the conduct of the defendants amounts to a violation of his constitutional rights; specifically, the undersigned finds that

4

his claims are best construed as allegations of deliberate indifference to serious medical needs under the Eighth Amendment.

§ 1983 only provides a cause of action against state actors. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). A private entity or individual is liable for their conduct only if they act under the color of state law. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005). A number of tests exist to evaluate the state-actor requirement, but the one relevant here is the public function test. Under the public function test, a private entity is a state actor if "that entity performs a function which is traditionally the exclusive province of the state." *Id*. (quoting *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). Private physicians employed by state prisons are among those considered state actors under the public function test. *West v. Atkins*, 487 U.S. 42, 54 (1988) ("Respondent, as a physician employed by [the State] to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury.").

In this case, Dr. Abebe works as a Unit Provider in the medical department at the Robertson Unit. Dkt. No. 18 at 12. Because Dr. Abebe is employed directly by TDCJ, a state agency, he is a state actor. While Dr. Eddleman is a private surgeon working for Hendrick Medical Center, Bennett alleges that he is contracted to provide medical services to Robertson Unit inmates and works "on behalf of TDCJ" alongside other Hendrick Hospital physicians. Dkt. No. 18 at 12–13. Based on these alleged facts, the undersigned concludes

5

that it is plausible Eddleman is a "physician employed by [Texas] to provide medical services to state prison inmates," and thus also a state actor under the public function test. *West*, 487 U.S. at 54. Because both defendants are state actors, Bennett may assert his § 1983 claims against them both.

### IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle

6

them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore

exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V.  ANALYSIS

Bennett alleges that: (1) Abebe and Eddleman failed to consider alternatives to surgery, such as steroid injections; (2) Abebe and Eddleman misrepresented that surgery was the only treatment option available; (3) Abebe misrepresented that the surgery would improve Bennett's quality of life; (4) Eddleman performed the surgery incorrectly, resulting in loose screws in Bennett's spine; (5) Eddleman knowingly left cotton in Bennett's spinal canal after surgery, and (6) Abebe failed to properly and promptly treat Bennett's post-surgery symptoms. The undersigned finds that these claims are properly construed as Eighth Amendment claims asserting denial of his serious medical needs.

The Eighth Amendment is violated when prison officials or doctors act with deliberate indifference to a prisoner's serious medical needs, whether by intentionally denying, delaying, or interfering with medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An Eighth Amendment medical claim has two prongs: objective exposure to a

substantial risk of serious harm, and subjective deliberate indifference on the part of the defendants. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

The objective prong of a medical claim is satisfied when the prisoner faces a substantial risk of serious harm, which requires the existence of a serious medical need, such as serious illness or injury. *Estelle*, 429 U.S. at 104–05. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n. 12; *see also id.* at 346 n. 17 (noting that there was no dispute that a head wound, which would become infected if not treated, posed a substantial health risk).

Even where a substantial risk exists, exposure to that risk is not *punishment* unless the defendants subjectively had the applicable mental state regarding that exposure. Satisfying this subjective prong requires the plaintiff to show that the defendant was (1) aware of facts permitting inference of risk, (2) subjectively drew that inference, and (3) disregarded the risk; the defendant's conduct must amount to wanton disregard for the prisoner's serious medical needs. *Spikes v. Wheat*, 141 F.4th 662, 668 (5th Cir. 2025) (citing *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quotation marks, citation, and alterations omitted)).

The deliberate indifference standard is not satisfied by allegations of negligence or medical malpractice, or claims that the defendants made an incorrect diagnosis, failed to provide additional treatment, or failed to perceive a significant risk. *Estelle*, 429 U.S. at 105–07; *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). The decision to provide further treatment, such as further testing or referral to a specialist, is "a

9

classic example of a matter for medical judgment" that does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Deliberate indifference is instead shown through allegations that an official refused to treat the prisoner, purposefully treated him incorrectly, or otherwise engaged in action showing wanton disregard for serious medical needs. *Estelle*, 429 U.S. at 105–07.

Based on this standard, the undersigned will evaluate each of Bennett's claims in turn to determine if he has plausibly alleged both the objective and subjective prongs of an Eighth Amendment medical needs claim.

### A. Failure to Consider Alternative Treatments

First, Bennett alleges that Abebe and Eddleman failed to consider alternative treatments to surgery. Bennett suggests that his hip pain and short breath could have been treated with steroid injections; he bases this conclusion on his medical research and testimonials from other inmates, which indicate that the treatment has anti-inflammatory properties. Dkt. No. 18 at 2.

Bennett alleges that, instead of considering the alternatives, Abebe used him as a "pawn and test puppet;" by either disregarding or failing to consider alternative treatments, Bennett asserts that he was exposed to a substantial risk of bodily harm. Dkt. No. 18 at 11–12. Bennett also alleges that Abebe and Eddleman had a financial incentive to prioritize surgery over alternative treatments, as Hendrick Hospital has a contract with TDCK to provide medical staff to the Robertson Unit. Dkt. No. 18 at 12.

The undersigned finds that Bennett has failed to plausibly allege that this conduct violated his Eighth Amendment rights. First, Bennett has not plausibly alleged that Abebe

or Eddleman failed to consider viable alternatives to surgery. The only alternative treatment Bennett describes is steroid injections; even accepting as true that this treatment reduces inflammation, Bennett does not allege that his hip pain or short breath were caused by inflammation. Dkt. No. 18 at 2. Bennett also does not explain how the testimonials from other inmates are comparable to his own symptoms and conditions. *Id.* Because Bennett has not shown that viable alternative treatments existed, he cannot demonstrate that failure to consider those alternatives exposed him to an objective risk of harm.

Second, Bennett has not plausibly alleged that the defendants acted with deliberate indifference to his medical needs. Even assuming that steroid injections were a viable alternative treatment, "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (rejecting inmate's allegations that the defendants should have attempted "alternative methods of treatment"). Bennett has not alleged that either Abebe or Eddleman refused to treat his symptoms, or that they sought to purposefully treat him incorrectly by performing surgery. *Estelle*, 429 U.S. at 105–07. Without this showing, he cannot plausibly allege that the defendants acted with deliberate indifference.

For these reasons, the undersigned concludes that Bennett has failed to plausibly allege that the defendants violated his Eighth Amendment rights by proceeding with surgery rather than alternative treatments.

### B. Misrepresentation of Surgery Risks and Alternatives

Next, Bennett alleges that Abebe and Eddleman misrepresented the risks of surgery and the availability of alternatives. When Bennett expressed concerns about proceeding

with surgery, both defendants told him that surgery was the only option. Dkt. No. 18 at 3. Bennett also alleges that Abebe told him that the surgery would improve his quality of life by relieving his pain and allowing him to walk without assistive devices.

    The undersigned finds that Bennett has failed to plausibly allege that any of these statements violated his Eighth Amendment rights. At the outset, Bennett has not plausibly alleged that any of these statements were false. Bennett has not shown that any alternative treatments exist, as discussed above; thus, he has also not shown that Abebe and Eddleman lied when they told him there were no alternative treatments. It also appears that Abebe's statement to Bennett described only the "outcome of the surgery without error," while Bennett's allegations show that his surgery had complications. Dkt. No. 8 at 4, 18 at 3.

    Even assuming that the statements were false, Bennett has also failed to plausibly allege that the defendants purposefully misrepresented the facts. He concedes that he does not know whether the defendants knew that alternative treatments existed, but insists that they "should have known." Dkt. No. 18 at 11–12. Thus, even if alternative treatments existed, Bennett has not alleged that Abebe or Eddleman knowingly misrepresented their existence. Similarly, Bennett does not allege that, had the surgery proceeded without complications, he would not have experienced the promised improvements to quality of life. Instead, his filings focus on the failure to perform the surgery correctly.[2] Dkt. No. 18 at 4–7,

---

[2] The wording of Bennett's questionnaire response could also be intended to indicate that Abebe promised that the surgery would succeed without error, and as a result improve his quality of life. Dkt. No. 18 at 3. If this is the case, Abebe's statement would plainly be false, as it is obvious that it is possible for surgery to encounter complications. Dr. Abebe, as a licensed physician, would no doubt understand that surgery carries an implicit risk of complications, and thus that a promise of complication-free surgery is false.
Even so, Bennett must demonstrate that Abebe acted with deliberate indifference to his serious medical needs. Failure to disclose the risks of surgery violates a doctor's duty of care and thus constitutes medical

9. In both cases, failure to be aware of alternative treatments or the probable outcome of successful surgery is at most negligence, which is insufficient to meet the deliberate indifference standard required for Bennett's Eighth Amendment claim. *Gobert*, 463 F.3d at 346.

For these reasons, the undersigned concludes that Bennett has failed to plausibly allege that the defendants violated his Eighth Amendment rights by misrepresenting the risks of surgery or the availability of alternative treatments.

### C. Failure to Perform Surgery Properly

Next, Bennett alleges that Eddleman acted with deliberate indifference by incorrectly performing his lower-spine surgery. He alleges that the screws used to perform the surgery became loosened after the operation, that Eddleman left cotton in Bennett's spinal canal, and that the surgery caused a laminectomy defect. Dkt. No. 18 at 5–7. While these defects were discovered via MRI performed by John Sealy Hospital staff, Bennett alleges that they were also acknowledge by Dr. Eddleman's surgery report prepared on June 15, 2022—the day Eddleman performed the lower-spine surgery. Dkt. No. 18 at 5–7.

The undersigned concludes that Bennett has not plausibly alleged that Eddleman violated his Eighth Amendment rights by acting with deliberate indifference. The subjective prong of deliberate indifference requires awareness of the facts from which a substantial risk can be inferred; without this subjective awareness, a defendant is not even liable for gross negligence, much less deliberate indifference. *Spikes*, 141 F.4th at 668; *Harris v. CHI St. Luke's Health Baylor Coll. of Med. Med. Ctr.*, No. 4:19-CV-04293, 2022 WL

---

malpractice. *See, e.g.*, *Knight v. Dep't of Army*, 757 F. Supp. 790 (W.D. Tex. 1991). However, malpractice alone does not indicate an intent to incorrectly treat Bennett or otherwise withhold treatment, *Estelle*, 429 U.S. at 105–07, and therefore does not rise to the level of deliberate indifference.

13

2871192 (S.D. Tex. July 20, 2022) (finding gross negligence was not shown when defendants did not have "actual, subjective awareness" that a surgery sponge was left in the patient's body).

Here, Bennett relies on the "operative details of surgery" prepared after his operation to establish Eddleman's awareness of the surgery defects. Dkt. No. 18 at 5. This report is not present in the authenticated record provided by the TDCJ, and thus the undersigned cannot verify what admissions were made within it. But even without the report at hand, Bennett's allegations about its contents fail to demonstrate subjective awareness for two reasons. First, Bennett does not allege that the report acknowledges the loose screws or laminectomy defect. Instead, Bennett alleges only that it acknowledges "leaving a foreign object in [the] spinal canal." Dkt. No. 18 at 5. This statement could be referring to the cotton left in Bennett's spinal canal, but context from the authenticated record casts doubt on this assumption.[3] Either way, Bennett has not plausibly alleged that Eddleman was aware of the loose screws or the laminectomy defect.

Second, accepting as true that Eddleman's report admits to leaving cotton in Bennett's body, Bennett still fails to allege that Eddleman prepared the report. Instead, Bennett assumes this is the cases, stating that it is "plausible to believe Dr. Christopher Eddleman detailed [the] notes." Dkt. No. 18 at 5. Without alleging that Eddleman either prepared or

---

[3] The records from Benett's visits to John Sealy Hospital make no mention of finding cotton in his spine or removing it during remedial surgery. In fact, the records from John Sealy never mention cotton at all, despite Bennett referring to them as documented evidence that the cotton is present. Dkt. No. 18 at 6–7. Instead, the hospital refers to "lucency" around the screws, Dkt. No. 18 at 5, which they discuss as a potential sign that the screws are loosened. The record also at times mentions a metallic "foreign body," but only in reference to the surgical rods and screws that were intended to remain behind after surgery.

14

reviewed the report, Bennett fails to plausibly allege that Eddleman was aware of the cotton in his spine, let alone that he deliberately ignored the risk that could be inferred from that information.[4]

For these reasons, the undersigned concludes that Bennett has failed to plausibly allege that Dr. Eddleman violated his Eighth Amendment rights by improperly performing his lower-back surgery.

### D. Failure to Remedy Post-Surgery Symptoms

Lastly, Bennett alleges that Abebe failed to properly treat Bennett's condition after surgery. When he reported his worsened symptoms, he was provided medication and a heating pad, although both proved ineffective. Dkt. No. 18 at 9–10. The staff also assured Bennett that they would "tell the Doctor," along with other vague responses. Dkt. No. 18 at 10. Bennett alleges that the medical staff should have considered alternatives, such a steroid treatments, decompression therapy, or referral to a nerve specialist; Bennett also alleges that effective treatment was delayed, causing "additional and lasting nerve damage." Dkt. No. 18 at 9.

The undersigned finds that Bennett has failed to plausibly allege that Abebe acted with deliberate indifference to his serious medical needs.[5] As before, allegations that the

---

[4] It is also not plausibly alleged that the cotton objectively presented a substantial risk of serious harm because Bennett does not allege that it posed a serious medical need. He does not allege that any physicians recommended treatment to remove the cotton, while the staff at John Sealy Hospital immediately recognized the loosened screws as requiring treatment.
Courts have recognized that leaving sponges in a patient is clearly negligent, even to a layman. *See, e.g.*, *Hemy v. Gianoli*, No. CV 21-1125, 2022 WL 3042258, at *2 (E.D. La. Aug. 2, 2022). However, this does not indicate that a layman would recognize that immediate treatment is required in the same way as an open head wound. *Gobert*, 463 F.3d at 346 n. 17.

[5] While not named as defendants, Bennett also describes the treatment provided by other Robertson nurses. Because their conduct was the same as Abebe's, Bennett also fails to allege their deliberate indifference.

treatment provided didn't work and that alternative treatment should have been attempted falls short of the deliberate indifference standard. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Estelle*, 429 U.S. at 107 (noting that the decision to refer a patient to a specialist is a "classic example of a matter for medical judgment" and not deliberate indifference). In addition, allegations that Abebe and other medical staff provided vague responses to his complaints is irrelevant if he was still being provided medical care. Here, he was not only provided medication and a heating pad, but also transferred to the infirmary for months. Dkt. No. 18 at 9–10.

Bennett's claim that effective treatment was delayed also fails to state a claim under the Eighth Amendment. Conduct that delays a prisoner's treatment constitutes deliberate indifference only when it is intentional. *See, e.g.*, *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006) (nurse refused to provide prescribed nitroglycerine to a prisoner she knew had cardiac issues); *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999) (doctors refused to treat inmate's broken jaw despite multiple complaints of excruciating pain). Bennett instead alleges that the delay arose because the Robertson medical staff failed to recognize the source of his symptoms, noting that the damage "could have been prevented if *immediately noticed*." Dkt. No. 18 at 9 (emphasis added). As before, failure to perceive a substantial risk is insufficient to find Abebe deliberately indifferent.

For these reasons, the undersigned concludes that Bennett has failed to plausibly allege that Dr. Abebe violated his Eighth Amendment rights by failing to properly treat his post-surgery condition.

## VI. LEAVE TO AMEND

Still, there is the issue of whether the Court must give Bennett leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the undersigned concludes that Bennett has plead his best case. The details of his claim have been expanded upon through his responses to the undersigned's Questionnaire; the authenticated medical record also expands significantly on the details of Bennett's treatment. Bennett's pleadings ultimately reveal that his complaint sounds in malpractice rather than deliberate indifference; he makes repeated references to what the parties should have done or should have known, and notably describes Eddleman's surgery as grossly negligent. Dkt. No. 18 at 9, 11–12. The undersigned finds that further leave to amend would not produce plausible allegations of deliberate indifference.

## VII. CONCLUSION

For the reasons above, the undersigned RECOMMENDS that the Court DISMISS Bennett's claims against all Defendants without prejudice for failure to state a claim on which relief can be granted.

## VIII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Bennett's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1-24-CV-00093-H.

ORDERED this 5th day of January 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE